UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
YVONNE MASSARO,                              :
                                  Plaintiff,      :
                                               :
                -against-                       :       17 Civ. 8191 (LGS)
                                             :
THE BOARD OF EDUCATION OF THE CITY     :       OPINION & ORDER
SCHOOL DISTRICT OF THE CITY OF NEW     :
YORK, et al.,                          :
                                 Defendants.     :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Defendant the Board of Education of the City School District of the City of New York (also known and doing business as The Department of Education of the City of New York) moves for summary judgment on Plaintiff Yvonne Massaro's claims that Defendant retaliated against her in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"). For the reasons stated below, the motion is granted in part and denied in part.

### I.  BACKGROUND

Plaintiff is an art teacher employed by Defendant from 1989 to July 2016. In 2011, Plaintiff filed a lawsuit against Defendant alleging age-based discrimination under the ADEA. The suit was dismissed in May 2013. Plaintiff filed an EEOC charge in August 2016. She then filed this action in 2017, alleging that as a result of the 2011 lawsuit and the EEOC charge, Defendant discriminated against her based on her age and retaliated against her from August 2013 through September 2016, both in violation of the ADEA. Defendant moved to dismiss for failure to state a claim. The Court granted Defendant's motion to dismiss. On appeal, the Second Circuit affirmed the dismissal of the discrimination claim and remanded for consideration of Plaintiff's retaliation claim, holding that although Plaintiff's alleged retaliatory

harms were minor in isolation, in aggregate they were sufficient to survive a motion to dismiss. Defendant now moves for summary judgment on that claim.

## II. STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In evaluating a motion for summary judgment, a court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences and resolv[e] all ambiguities in its favor." *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 164 (2d Cir. 2020) (internal quotation marks omitted). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (internal quotation marks omitted). "Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013); *accord Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 323 (S.D.N.Y. 2019), *aff'd*, 828 F. App'x 84 (2d Cir. 2020) (summary order).

A retaliation claim under the ADEA follows the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Gorzynski v. JetBlue Airways Corp.*,

596 F.3d 93, 110 (2d Cir. 2010); *accord Peddy v. L'Oreal USA, Inc.*, No. 18 Civ. 7499, 2020 WL 4003587, at *17 (S.D.N.Y. July 15, 2020).  Under that framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *Gorzynski*, 596 F.3d at 106.  If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for the adverse employment action.  *Id.*  Once such a reason is provided, "the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's action was in fact the result of discrimination." *Id.*

**III.   DISCUSSION**

    **A.   Plaintiff's Prima Facie Case**

To establish a prima facie case of retaliation under the ADEA, "a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find (1) that [s]he engaged in protected participation or opposition under . . . the ADEA[ ], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action . . . ."  *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (internal quotation marks and citations omitted); *accord Ninying v. N.Y.C. Fire Dep't*, 807 F. App'x 112, 115 (2d Cir. 2020) (summary order).

    **1.   Plaintiff's Protected Activity and Defendant's Awareness**

Plaintiff claims that her 2011 discrimination lawsuit against Defendant and her August 3, 2016, EEOC charge of discrimination constitute protected activity of which Defendant was aware.  Defendant concedes that the 2011 lawsuit was protected activity of which it was aware, and that the EEOC charge constitutes protected activity.

As to Defendant's awareness of the August 3, 2016, EEOC charge, the only harmful

conduct Plaintiff identifies that might have been influenced by that charge is Defendant's review of its denial of her substitute teaching license in September 2016. The parties do not dispute that in August 2016, Plaintiff applied for a substitute teaching license from Defendant, and on August 18, 2016, her application was denied due to an "Unsatisfactory" rating she received in 2012. On September 12, 2016, Plaintiff requested a review of her application, and on September 19, 2016, Defendant asked that she complete additional forms. Plaintiff ultimately never received her substitute license, though the parties dispute whether that non-receipt was because (1) Plaintiff never submitted the requested forms or (2) Defendant did not take further action on the review petition. The parties agree that Defendant did not receive notice of the EEOC charge until September 16, 2016, and that Defendant's review of Plaintiff's application following that date is the only complained-of conduct that could support a claim of retaliation for the EEOC charge.

### 2. Materially Adverse Actions

Plaintiff reiterates the same retaliatory actions as alleged in the Complaint. Plaintiff first identifies conduct that ran continuously from 2012 to 2016: that (1) she was deliberately assigned to a classroom that was too cold in the winter and too hot in the summer and lacked windows; (2) her classes were always scheduled for open enrollment, whereas other teachers could select students from a pool of applicants to avoid disruptive students; (3) she was assigned an excessive number of disruptive students, but students with high GPAs were blocked from taking her class; and (4) Assistant Principal Kontarinis refused to allow Plaintiff to teach advanced courses, gave her outdated equipment and imposed a lab fee only for her class.

Plaintiff also identifies discrete instances of allegedly retaliatory conduct: that (1) in 2012, she received an "Unsatisfactory" rating, received notations in her personnel file for an intruder who was not her student and for failing to address a puddle from a leaky bottle, and was

labeled "excessively absent" (on a rating sheet that contained "many attendance errors") because she took 20 days off for jury duty; (2) in the 2014-2015 school year, she was assigned a difficult schedule that required her to teach four back-to-back classes in different classrooms without adequate time to prepare or use the restroom between sessions; (3) in the 2015-2016 school year, she was assigned larger classes than her colleagues, and students with behavioral issues were added to her class when enrollment was low; (4) in January 2016, her students' work was removed from bulletin boards and furniture was removed from her classroom; (5) in April 2016, a new course list was instituted which resulted in Plaintiff's students not being able to use computers, and Principal Barge gave her a biased formal observation; (6) in May 2016, Principal Barge refused to give Plaintiff a video of a workplace injury she had suffered and told her to obtain a subpoena for it; (7) in June 2016, Assistant Principal Kontarinis refused to allow Plaintiff to use a printer, and it was moved to another teacher's classroom; and (8) in July 2013, Plaintiff was investigated for allegedly using corporal punishment on a student who was not in her class.

### i. Time-Barred Conduct

Plaintiff filed her EEOC complaint on August 3, 2016, shortly after her retirement. The ADEA has a 300-day statute of limitations that runs from the date of the alleged unlawful employment practice. *See* 29 U.S.C. § 626(d)(1)(B); *see also Brodsky v. City Univ. of New York*, 56 F.3d 8, 10 (2d Cir. 1995); *Lopez v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 9205, 2020 WL 4340947, at *4 (S.D.N.Y. July 28, 2020). Any allegedly retaliatory conduct occurring prior to October 8, 2015, is barred by the statute of limitations, unless Plaintiff can establish a continuing violation for conduct before that date.

"The continuing violation doctrine provides that [w]hen a plaintiff experiences a

5

continuous practice and policy [that violates his or her rights], . . . the commencement of the statute of limitations period may be delayed until the last violation." *Flores v. United States*, 885 F.3d 119, 121 (2d Cir. 2018) (alterations in original) (internal quotation marks omitted). "To qualify as continuing, the claimed actions must not be discrete acts, but repeated conduct that occurs over a series of days or perhaps years." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019); *see also Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018) (summary order) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) (*abrogated on other grounds by Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 U.S. 1, 5–6 (2011)); *accord James v. Van Blarcum*, 782 Fed App'x 83, 84 (2d Cir 2019) (summary order); *Zoulas*, 400 F. Supp. 3d at 50.

In the context of ADEA claims by schoolteachers like Plaintiff, examples of discrete acts "include disciplining, negative performance reviews, termination, failure to promote, and denial of a preferred job position." *Zoulas*, 400 F. Supp. 3d at 50. "The continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Siclari v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 7611, 2020 WL 7028870, at *4 (S.D.N.Y. Nov. 30, 2020); *accord Quadrozzi Concrete Corp. v. City of New York*, No. 03 Civ. 1905, 2004 WL 2222164, at *8 (S.D.N.Y. Sept. 30, 2004), *aff'd*, 149 F. App'x 17 (2d Cir. 2005) (summary order).

Claims based on discrete acts that occurred before October 8, 2015, are barred by the statute of limitations, and such acts are not eligible for consideration as a continuing violation. Those include: (1) the 2012 "Unsatisfactory" rating and disciplinary actions; (2) the 2013

investigation for corporal punishment; and (3) the back-to-back class scheduling in the 2014-2015 school year, all of which occurred prior to October 8, 2015.

The remaining conduct that commenced before the limitations cutoff allegedly occurred continuously from 2012 to 2016 -- i.e., assignment to an intemperate and windowless classroom, open enrollment, assignment of disruptive students, refusal to allow Plaintiff to teach advanced courses and the requirement that her courses have lab fees and use outdated equipment.  The parties dispute the factual accuracy of these allegations and whether they constitute discrete acts.  But Plaintiff does not identify any evidence showing that this conduct was the result of a "discriminatory policy or mechanism," as is required to establish a continuing violation.  *Lambert*, 10 F.3d at 53.  Although all factual disputes must be construed in the light most favorable to Plaintiff as the non-moving party, to make a prima facie case of ADEA retaliation, and thus overcome summary judgment, Plaintiff may not "rely on mere speculation or conjecture as to the true nature of the facts," *Moses*, 913 F.3d at 305, but "unlike on a motion to dismiss . . . must actually point to record evidence creating a genuine dispute as to the specific facts alleged." *Vega v. Semple*, 963 F.3d 259, 274 n.67 (2d Cir. 2020).  Plaintiff provides a declaration that reiterates the allegations in her complaint, as well as responses to Defendant's Rule 56 statement that do the same.  Neither identifies any evidence from which a reasonable jury could conclude that Defendant's conduct falling outside the limitations period resulted from a discriminatory policy or mechanism.  Summary judgment is granted for Defendant to the extent Plaintiff's retaliation claim rests on conduct that occurred before October 8, 2015.

In response, Plaintiff cites precedent stating that hostile work environment claims by necessity involve repeated conduct.  That is true but beside the point, as Plaintiff provides no evidence supporting the inference that the repeated conduct complained of was part of any

discriminatory practice.  Instead, as with her complaint and declaration, Plaintiff lists the objectionable conduct alongside the bare conclusion that it was retaliatory.  Plaintiff also notes that the Second Circuit held that her complained-of conduct could, in aggregate, plausibly support a claim of retaliation at the motion to dismiss stage.  That holding does not bear on the question of whether Plaintiff has demonstrated a fact issue as to a continuing violation that precludes summary judgment for Defendant as to conduct barred by the statute of limitations.

### ii.  Non-Time-Barred Conduct

For purposes of an ADEA retaliation claim, a material adverse action is one that "could well have dissuaded a reasonable employee in [plaintiff's] position from complaining of unlawful discrimination."  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  "[T]he broadness of this definition means that 'the scope of [the] anti-retaliation provision is broader than that of its discriminatory action provision.'" *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016) (quoting *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007)).  As the Second Circuit has explained, there are no bright-line rules as to what amounts to a materially adverse action so courts must "pore over each case to determine whether the challenged [ ] action reaches the level of adverse," recognizing that "not every unpleasant matter short of [discharge or demotion]" qualifies.  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997); *accord Salahuddin v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 6712, 2017 WL 3724287, at *3 (S.D.N.Y. Aug. 28, 2017).

Plaintiff provides record evidence of certain non-time-barred conduct:  the classroom temperature issues and lack of windows, assignment of disruptive students and rejection of those with high GPAs, open enrollment scheduling, large class sizes, denial of equipment, denial of

requests to teach advanced classes, imposition of lab fees, removal of work from bulletin boards, a biased formal observation, denial of access to video of her workplace injury and denial of her substitute teaching license application.[1]  Defendant contests the accuracy of some, but not all, of this evidence, pointing to countervailing record evidence showing that:  (1) Plaintiff was provided adequate technology and supplies; (2) her class was not always open enrollment; (3) her class schedule and sizes were comparable to similarly-situated colleagues; (4) she was assigned a similar number of disruptive or special needs students as her colleagues; (5) student work was removed from all bulletin boards in the school; and (6) she never submitted all documentation required for her substitute teaching license application.  Because a reasonable jury evaluating the conflicting evidence could conclude that this conduct occurred and that it could dissuade a reasonable employee in Plaintiff's position from complaining of unlawful discrimination, summary judgment cannot be granted to Defendant on this basis.

Defendant argues that these complained-of actions do not meet the standard for an adverse employment action as they amount to "petty slights or minor annoyances."  As the Second Circuit has noted, "[c]ontext matters" in this analysis, and something that might be a "petty slight" to one person might "matter enormously" to another in the context of a retaliation claim, which "covers a broader range of conduct than does the adverse action standard for claims of [substantive] discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington*, 548 U.S. at 69).  Because a reasonable jury could conclude that the complained of actions, in aggregate, "could well dissuade a reasonable worker from making or supporting a charge of discrimination," summary judgment for Defendant on this basis is

---

[1] The non-time-barred conduct identified in the record does not include all harmful conduct alleged in Plaintiff's complaint and moving papers.  This opinion addresses only the conduct supported by record evidence.  *See* Fed. R. Civ. P. 56(c)(1).

9

improper. *Id.*

### 3. Causation

Regarding causation, the law is unsettled as to whether the Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009), requires but-for causation only for ADEA claims of disparate treatment, leaving ADEA retaliation claims to be decided under the more relaxed "motivating factor" test. *See Fried v. LVI Servs., Inc.*, 500 F. App'x 39, 41–42 (2d Cir. 2012) (summary order) (declining to reach the issue of whether the "but-for test or the motivating factor analysis" applies to ADEA retaliation claims because the record was insufficient to satisfy either standard). Since *Fried*, the Supreme Court has held that but-for causation applies to retaliation claims under Title VII, *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013), and the Second Circuit and numerous courts in this District in non-binding decisions have applied *Nassar* to conclude that ADEA retaliation plaintiffs must establish "but-for" causation in a prima facie case. *See, e.g.*, *Ninying,* 807 F. App'x at 115 ("the ADEA or Title VII, both . . . required [plaintiff] to allege that his protected activity was the but-for cause of the adverse employment action"); *Torre v. Charter Commc'ns, Inc.*, No. 19 Civ. 5708, 2020 WL 5982684, at *6 (S.D.N.Y. Oct. 8, 2020).

Plaintiff attempts to establish causal links between the complained-of activity and her (1) 2011 lawsuit and (2) 2016 EEOC charge. With respect to the 2011 lawsuit and allegedly retaliatory conduct, all of which occurred while she was still employed by Defendant, Plaintiff has not met her burden to show a prima facie case of causation under either the "but-for" or "motivating factor" tests. Due to the short amount of time between Plaintiff's filing of the EEOC charge after her retirement and Defendant's alleged denial of her substitute teaching license application, a reasonable jury could conclude that the EEOC charge was a but-for cause

10

of or motivating factor in Defendant's non-issuance of that license.

### i. Retaliation for the 2011 Lawsuit

In an ADEA retaliation case, "[c]ausation can be established either directly through evidence of retaliatory animus or indirectly by demonstrating that the adverse employment action followed quickly on the heels of the protected activity or through other evidence such as disparate treatment of fellow employees." *Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 522 (S.D.N.Y. 2016), *aff'd*, 689 F. App'x 670 (2d Cir. 2017) (*citing Kercado–Clymer v. City of Amsterdam*, 370 Fed. App'x 238, 242–43 (2d Cir. 2010) (summary order)). All of the non-time-barred conduct that Plaintiff contends was in retaliation for the 2011 lawsuit occurred between the limitations date of October 8, 2015, and Plaintiff's retirement in July 2016. Plaintiff has provided no direct evidence of retaliatory animus underlying that conduct. Nor has Plaintiff adduced any evidence from which a reasonable juror could conclude that her fellow employees received disparate treatment. Although Plaintiff states, without reference to the record, that she was treated differently from her coworkers, the overwhelming record evidence shows that fellow teachers worked under similar conditions as Plaintiff, including comparable schedules, class sizes and compositions, and access to educational resources.

Nor does the amount of time that passed between the 2011 lawsuit and the complained-of conduct make out a prima facie case of causation. "A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Gorzynski*, 596 F.3d at 110 (internal quotation marks and alterations omitted); *accord Wein v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 11141, 2020 WL 4903997, at *20 (S.D.N.Y. Aug. 19, 2020). Plaintiff's lawsuit was filed in 2011, dismissed by the state trial court in May 2013 and dismissed on appeal on October 23,

11

2014.  *See Massaro v. Dep't of Educ. of New York*, 993 N.Y.S.2d 905 (1st Dep't 2014).  The non-time-barred conduct runs from October 8, 2015, through Plaintiff's retirement in July 2016.

Although there is no bright line to determine when the gap between protected activity and retaliatory action is too attenuated, when the plaintiff relies on temporal proximity alone, "the temporal proximity must be very close."  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (internal quotation marks omitted); *accord Barrer-Cohen v. Greenburgh Cent. Sch. Dist.*, No. 18 Civ. 1847, 2019 WL 3456679, at *6 (S.D.N.Y. July 30, 2019).  District courts in this circuit have held that a "temporal gap of more than a few months will generally be insufficient to raise a plausible inference of causation without more."  *Ray v. N.Y. State Ins. Fund*, No. 16 Civ. 2895, 2018 WL 3475467, at *11 (S.D.N.Y. July 18, 2018) (collecting cases).  "'Temporal proximity alone' between the plaintiff's protected activity and the alleged retaliatory action 'is generally insufficient' to establish causation 'after about three months.'"  *Rettino v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 5326, 2020 WL 4735299, at *3 (S.D.N.Y. Aug. 14, 2020) (quoting *Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 49 (2d Cir. 2018) (summary order) (citing *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990))).  The period between the protected activity and actionable retaliatory conduct in this case is much longer, and Plaintiff does not identify any other evidence from which a reasonable jury could infer causation.  Because Plaintiff fails to meet her burden on this aspect of her prima facie case, summary judgment is granted for Defendant on Plaintiff's retaliation claim for conduct occurring between October 8, 2015, and her July 2016 retirement.

### ii.  The 2016 EEOC Charge

Plaintiff also claims Defendant retaliated against her for her EEOC charge by denying her application for a substitute teaching license.  As with the conduct allegedly motivated by the

2011 lawsuit, Plaintiff identifies no direct evidence of retaliatory animus or disparate treatment by Defendant in relation to the license application.

Unlike Plaintiff's other complained-of conduct, some of Defendant's activity with respect to the application closely followed notice of the EEOC charge on September 16, 2021. The parties agree that pursuant to its review of Plaintiff's application to serve as a substitute teacher, Defendant sent an email to Plaintiff on September 19, 2016, stating that Plaintiff needed to complete additional forms and submit them through Defendant's online portal. Defendant claims that Plaintiff never completed these forms, thus resulting in an incomplete application upon which Defendant could not act. Plaintiff stated in her deposition that she did not complete those forms shortly after Defendant states they were sent because she did not receive them, but that she visited Defendant's premises to check on the status of her application and was told she would not receive a substitute teaching license. Her affidavit clarifies this testimony, noting that she later received the email and submitted the requested forms, and was again told on a second visit to Defendant's premises that she would not receive a license. Genuine issues of material fact exist as to whether: (1) Plaintiff submitted those forms; (2) Defendant did not issue a license due to their absence; and (3) Defendant explicitly told Plaintiff that her license application had been denied, instead of declining to act on it. If Defendant in fact denied the substitute teaching license, then, drawing all inferences in Plaintiff's favor, a jury could conclude that the decision was due to or motivated by retaliatory animus arising from the immediately preceding EEOC charge. Plaintiff has met her prima facie burden on causation for Defendant's review of her substitute teaching license application on or after September 16, 2016.

### B. Non-Discriminatory Reasons for Defendant's Action and Pretext

Plaintiff has made a prima facie case of retaliation under the ADEA only for Defendant's

review of her substitute teaching application following notice of the EEOC charge on September 16, 2016.  The burden shifts to Defendant to provide a "legitimate, nondiscriminatory reason" for its action, after which Plaintiff "can no longer rely on the prima facie case, but may still prevail if she can show that the employer's action was in fact the result of discrimination."  *Gorzynski*, 596 F.3d at 106.  Defendant has provided a nondiscriminatory justification, noting an email supporting its claim that it did not take further action on Plaintiff's substitute teaching application because Plaintiff never provided the necessary forms.  Plaintiff's countervailing testimony is that Defendant twice told her that her application was denied, both before and after she submitted the requested forms.  Because a reasonable jury could accept Plaintiff's testimony to conclude that Defendant's stated nondiscriminatory justification for its denial of the substitute teaching was pretextual, summary judgment for Defendant is improper on this basis.

### IV.  CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is denied as to Plaintiff's claim that Defendant's review of her substitute teaching application on or after September 16, 2016, was in retaliation to her EEOC charge.  Defendant's motion for summary judgment is otherwise granted.  The Clerk of Court is respectfully directed to close Docket Number 59.

Dated:  January 19, 2021
         New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**